# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT JONES, ROBERT COY, RICHARD J. DRENNON, JAMES COY, <br><br> Plaintiffs, <br><br> vs. <br><br> IDAHO LEGISLATIVE REPRESENTATIVES, et al., <br><br> Defendants. | Case No.: 1:16-cv-00329-REB <br><br> **MEMORANDUM DECISION AND ORDER** |

Now pending before the Court are following three dispositive motions:

- The State Defendants' Motion to Dismiss (Docket No. 6);

- The Ada County Defendants' Motion to Dismiss (Docket No. 7); and

- The Meridian Defendants' Motion to Dismiss (Docket No. 30).

Additionally, there are several other, somewhat related, motions also pending, including:

- The Meridian Defendants' Motion to Stay (Docket No. 25);

- The Meridian Defendants' Motion for Leave to File its above-referenced Motion to Dismiss (Docket No. 30);

- Plaintiffs' various Motions for Extension of Time to respond to the Meridian Defendants' Motion to Dismiss (Docket Nos. 34-37);

- Plaintiffs' Motion for Permanent Injunction (Docket No. 40);

- The State Defendants' Motion to Seal (Docket No. 50); and

- Plaintiffs' Motion for Hearing on Plaintiffs' Motion for Permanent Injunction (Docket No. 52).

Having carefully considered the record and otherwise being fully advised, the Court

enters the following Memorandum Decision and Order:

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On July 22, 2016, four Plaintiffs (Scott Jones, Robert Coy, Richard Drennon, and James Coy) filed a 68-page Complaint (excluding 134 pages of exhibits) against roughly 60 named Defendants. Plaintiffs' Complaint is an amalgamation of factually and legally-unrelated claims (approximately 300 allegations) of each Plaintiff against the various state, county, and local governmental entity Defendants (and their officials). The Plaintiffs' scattershot allegations against certain, or all of the Defendants (*see* Compl. at ¶¶ 42-299) are then followed by four "claims for relief," described, in relevant part, as:

**FIRST CLAIM FOR RELIEF[1]:**

- "All plaintiffs claim that the defendants engaged in collusion if not an actual *conspiracy* to deprive plaintiffs of their constitutionally protected right to seek redress of grievances and access to court." Compl. at ¶ 301 (emphasis in original).

- "All Plaintiffs claim that the defendants engage in a collusion if not an actual conspiracy to violate Plaintiffs' protected constitutional rights as defined under both Idaho and the United States Constitutional Amendments, sections 1, 4, 5, 6, 7, and 14." *Id*. at ¶ 302.

- "All Plaintiffs have suffered both physically and mentally at the hands of the defendants and the conduct there to." *Id*. at ¶ 303.

- "All Plaintiffs seek a preliminary injunction against the defendants to cease and desist harassing and threatening Plaintiffs by continually coming to Plaintiffs residence for the express purpose to chill the Plaintiffs' rights to gather and research the law as well as assist each other in preparing documents to be filed administratively or in the Courts." *Id*. at ¶ 304

- "All Plaintiffs seek compensatory damages and punitive damages in excess of $100,000 per defendant named including unknown defendant's name or discovered." *Id*. at ¶ 305.

---

[1] The language is taken verbatim from the Complaint.

**MEMORANDUM DECISION AND ORDER - 2**

**SECOND CLAIM FOR RELIEF:**

• "Plaintiff Drennon claims that the defendants Board of Correction, part of corrections, commission for pardons, and paroles, and the division for probation and parole officials and defendants engaged in a collusion and/or conspiracy to cause plaintiff Drennon injury to his income and his rights to assist others in seeking their judicial remedies." *Id.* at ¶ 307.

• "Plaintiff Drennon claims that because of the defendants' interference with his abilities to gain donations for his services, plaintiff Drennon has lost approximately $250,000 of income." *Id.* at ¶ 308

• "Plaintiff Drennon has suffered severe emotional and psychological injury at the hands of the defendants and seeks punitive damages in excess of $1 million from each defendant found guilty of causing plaintiff Drennon injury." *Id.* at ¶ 309.

• "Plaintiff Drennon's physicians will testify to the damage caused by the above department of corrections probation and parole as well as Ada County Jail depriving Plaintiff Drennon of his adequate medical are resulting in permanent damage to Plaintiff Drennon's health." *Id.* at ¶ 310.

**THIRD CLAIM FOR RELIEF:**

• "Plaintiff Jones, plaintiff Robert coy, and Plaintiff James Coy claim that the sentence deprive them of their adequate access to administrative remedies and ENGAGED a collusion to punish these plaintiffs for exercising their constitutional right of redress of grievance, as defined by the first, fifth, sixth, seventh, and 14th amendments to the Constitution." *Id.* at ¶ 312 (emphasis in original).

• "Plaintiff Jones, plaintiff Robert coy, and Plaintiff James Coy claim that because of the defendants interference with their administrative processes, that the plaintiffs had been punished by Corporation who refuses to comply with the uniform commercial codes thus depriving plaintiffs of all their due process rights under the first, fourth, fifth, sixth, seventh, eighth, and 14th amendments of the Constitution as well as violation of Idaho's Constitution amendments." *Id.* at ¶ 313.

• "Plaintiff Jones, plaintiff Robert coy, and Plaintiff James Coy claim that the defendants have deprived the plaintiffs of their ability to engage in lawful income and trade, which resulted in the defendants loss of income in excess

of $500,000, and these Plaintiffs seek damages in the form of $1 million per defendant that is found guilty of plaintiffs' claims." *Id*. at ¶ 314.

- "Plaintiff Jones, plaintiff Robert coy, and plaintiff James Coy claim that their rights to seek administrative relief and judicial relief had been chilled and have caused severe psychological emotional and physical damages as well as exasperated the current medical problems that Robert Coy deals with on a daily basis." *Id*. at ¶ 315.

**FOURTH CLAIM FOR RELIEF:**

- "All plaintiff claims that the defendants will engage in a retaliatory manner by either falsely creating violations of some form of law or statute, with the intent to stop plaintiffs from pursuing this litigation." *Id*. at ¶ 317.

- "All plaintiffs claim that the defendants have stopped, and chilled, plaintiff's right to exercise freedom of association, freedom or redress of grievance, freedom of unlawful arrest and search, all due process protections and access to court as well as access to administrative remedies." *Id*. at ¶ 318.

- "Plaintiff claims that the court should issue a preliminary injunction ordering all defendants to cease any further harassment without legitimate foundation, probable cause and in compliance with due process." *Id*. at ¶ 319.

Plaintiffs further request that the Court "issue a preliminary injunction against all the defendants named in this lawsuit . . . ." *Id*. at p. 66, ¶ b; *see also id.* at ¶¶ 320-22.

For their part, Defendants have attempted to work through Plaintiffs' Complaint, to assemble their respective Motions to Dismiss.

**DISCUSSION**

**A.    Legal Standard**

Under FRCP 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); *Bell Atl. Corp. v. Twombly*, 550 U.S.

**MEMORANDUM DECISION AND ORDER - 4**

544, 555 (2007). When evaluating an FRCP 12(b)(6) motion, a court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pursuant to Idaho's Local Civil Rules, a party's failure to oppose a motion may be deemed consent to the granting of the motion; indeed, Idaho Local Civil Rule 7.1(e)(1) states in relevant part:

> Except as provided in subpart 2 below [(addressing summary judgment motions brought under FRCP 56)], if an adverse party fails to timely file any response documents required to be filed under this rule, such failure may be deemed to

**MEMORANDUM DECISION AND ORDER - 5**

> constitute a consent to the sustaining of said pleading or the granting of said motion or other application.

Dist. Idaho Loc. Civ. R. 7.1(e)(1); *see also Wystrach v. Ciachurski*, 2008 WL 467692, *2 (9th Cir. 2008) (considering similar Arizona Local Rule and refusing "to extend to motions to dismiss the requirement that a district court examine the merits of an unopposed motion for summary judgment before summarily granting it pursuant to a local rule."); *Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995) (affirming grant of an unopposed motion to dismiss under local rule by deeming pro se litigant's failure to oppose as consent to granting motion).

**B.      Plaintiffs' Complaint is Dismissed**

       1.      <u>Plaintiffs' Complaint is Procedurally Improper</u>

While there is nothing procedurally improper with one or several plaintiffs asserting multiple claims against a single or multiple parties *per se*, the parties and their claims must have some relation to one another – that is, they must be bound by a common denominator, presenting an organized and consistent legal action. *See, e.g.*, Fed. R. Civ. P. 20(a)(1) & (2) (permitting joinder of plaintiffs and/or defendants so long as (1) alleged rights to relief arise out of same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all parties will arise in the action). More simply, a claim against one defendant should not be joined with an unrelated claim against another defendant. *See, e.g.*, *Hoffenberg v. Grondolsky*, 2009 WL 3230330, *3 (D.N.J. 2009) (in PLRA context: "A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner."); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (same). Unrelated claims against different defendants

**MEMORANDUM DECISION AND ORDER - 6**

belong in different suits, not only to prevent the sort of morass that a multi-party/multi-claim suit naturally produces, but also to ensure that litigants pay the required filing fees.

Here, Plaintiffs' Complaint is wholly deficient. It presents a hodgepodge of unrelated claims between certain named Plaintiffs and various named Defendants. For example, a random sampling of Plaintiffs' allegations include the following:

<u>Plaintiff Scott Jones</u>:

¶ 48. "Plaintiff Jones is a researcher of the laws regarding the Uniform Commercial Code in the State of Idaho as well as federal statutes."

¶ 49. "Plaintiff Jones has engaged in the legal pursuit of filing the Uniform Commercial Code's under state and federal law against corporate individuals who violate his rights under the Uniform Commercial Code standards."

¶ 51. "Plaintiff Jones has trademarked his name and as such individuals who use his name without authority are in violation of trademark laws under the Uniform Commercial Code."

¶ 53. "At no time did Plaintiff Jones receive a notice of improper filing against the above defendants, which, as required under the Idaho Uniform Commercial Codes, the defendants are mandatorily required to give a UCC Information Statement to plaintiff Jones."

¶ 54. "The defendants in this case, regarding Jones' constitutional rights, had failed to respond to the claims in the documents filed and therefore have acquiesced to the statements in those claims."

¶ 78. "In or about September, 2013, Plaintiff Jones was stopped and cited by Defendant Stoy, Meridian Police Officer, for an alleged speeding infraction."

¶ 79. "At that time, Plaintiff Jones never signed any form of agreement/contract recognizing the alleged speeding infraction."

¶ 80. "In and around the years 2013 or 2014, Plaintiff Jones went to file Plaintiff Jones' security agreement on an Idaho UCC Financing Statement with the Idaho Secretary of State. Jeff Harvey, of the UCC Department, with the Secretary of State's office declined to file Plaintiff Jones security agreement, on a UCC-1 Financing Statement, stating that people that do these types of filings are not recognized or filed in Idaho. He also stated that UCC-1

¶ 81. Financing Statement filings against government employees are not accepted or filed."

¶ 81. "On March 25, 2014, Plaintiff Jones sent William Stoy, Meridian Police Officer hereinafter Lien Debtor, a Declaration of Copyright Notice, Copyright Notice, and Proof of Publication affidavit, by USPS Certified Mail Receipt #7011 2970 0001 6264 0792, signed for by Pam Lucas, delivered on March 26, 2014, at the MERIDIAN POLICE DEPARTMENT, located at 1401 E. Watertower Street, Meridian, Idaho.

¶ 82. "The Copyright Notice of Scott D Jones©, A.R. states that any unauthorized use of the name of Scott D Jones©, in any name variation, is subject to $500,000.00 per use, orally or written."

¶ 84. "On April 1, 2014, Plaintiff Jones and William Stoy Lien Debtor, voluntarily, did make a court appearance against Plaintiff Jones, case #CR-IN-2013-0033402 and accepted the contract by stating Plaintiff Jones' name, which Plaintiff Jones noticed Stoy that the use of Plaintiff Jones' name was breach of the Copyright laws. William Stoy Lien Debtor did orally repeat Plaintiff Jones' name in the court hearing while on the witness stand and without Plaintiff Jones' authorization."

¶ 99. "Plaintiff Jones is entitled to recover the value of the contract established by William Stoy Lien Debtor, for use of Plaintiff Jones' copy-righted name, in the amount of two (2) counts of Five Hundred Thousand dollars per unauthorized use of Plaintiff Jones' Copyright Notice ($500,000.00) in US dollars, by William Stoy Lien Debtor's Public Hazard Bond &/or William Stoy Lien Debtors assets."

¶ 100. "On August 6, 2015, Plaintiff Jones was arrested for allegedly filing a false or forged document; this is violation of the Constitution of the State of Idaho: Article 1 Section 7, 8, 9, 10 and 13."

¶ 101. "On or about (August 13, 2015) at approximately (10:30 pm) at Plaintiff Jones' residence within the County of Ada, when without probable cause, as no warrant was presented to Plaintiff Jones (Scott D Jones©, A.R., the living, breathing person and not the corporation SCOTT D JONES©) and was violated a number times and arrested by numerous officers of Ada County Sheriff's Department, did aid & abet their employees establishing the custom and policy of forcing their way over the threshold and into a private home (4th & 8th Amendment violations), detained, placed under physical arrest and emotional restraint, questioned, searched, arrested, booked, finger printed, and jailed, caused stress and harm, all without probable cause, caused said damages, failed to provide and show Plaintiff Jones' any Warrant and

Affidavit of Support, signed by a judge's original wet inked signature and Plaintiff Jones' believes none exists."

¶ 123. "After Plaintiff Jones filed a UCC Financing Statement pursuant to the Corporate statutory mandates on the Corporate entity known as the STATE OF IDAHO with DUNN's identifier number of 07-313-3787, which the Defendants are attempting to quash, Plaintiff Jones alleges that Defendant Jeff Harvey, UCC Specialist for the Secretary of State for the State of Idaho, D & B #07-313-3787, violated Plaintiff Jones' protected liberty interest, statutorily protected liberty interest and protected Constitutional rights by determining that Plaintiff Jones' administrative process under the federal correspondence process against Defendant Stoy was exempt from the alleged claim due to Defendant Stoy's actions being authorized under Defendant Stoy's line of duty. Defendant Harvey testified under oath in the Defendant Ada County Court to the previous statement."

¶ 140. "Plaintiff Jones alleges that Defendant Jeff Harvey violated Plaintiff Jones' protected liberty interest, statutorily protected liberty interest and protected Constitutional rights by refusing to file UCC-1, as identified above."

¶ 157. "Nowhere and at no time did the Defendant(s) explain to Plaintiff Jones why it was the lien was invalid, and to this day no one has explained why Plaintiff Jones' UCC filings may be inappropriate, other than citing a statute which makes following the UCC Rules some form of illegal act."

¶ 158. "Plaintiff Jones attended a hearing on July 21, 2016 owner about 9 AM in the Honorable defendant Greenwood acknowledged the state of Idaho was incorporated but refuse to comply with the state and federal Uniform Commercial Code set were filed with the office."

¶ 161. "Plaintiff Jones filed a NOTICE OF TORT CLAIM against the secretary of the state level and the state of Idaho and other defendants identified above."

Plaintiff Richard Drennon

¶ 162. "On January 16, 2008, plaintiff Drennon was granted parole after the commission of pardons and parole approved plaintiff Drennon's parole plan, which clearly stated that plaintiff Drennon would be working in the legal area and assisting attorneys and others as needed and authorized under the law."

¶ 163. "Plaintiff Drennon has complied with every condition of parole and has passed all twelve polygraphs taken since his release from incarceration."

¶ 164. "However the defendants in this case, or most of the defendants in this case, had engaged in some form of collusion to deprive plaintiff of his freedom and

**MEMORANDUM DECISION AND ORDER - 9**

right to review an research the law which may have enabled plaintiff Drennon to pay for his cost of supervision, child support, court fines and personal needs, i.e., over the counter medication, necessary and special foods do to Plaintiff Drennon diabetes and gout, which Plaintiff Drennon's insurance does not cover."

¶ 165. "Plaintiff Drennon lives on his $720 to $750 of SSI disability and any donations or funds received for providing the research in assistance from individuals, above the $750 of disability, went to pay the expenses on the above paragraph."

¶ 166. "However, the defendants herein have went out of their way to calls plaintiff Drennon unnecessary grief, harassment, emotional distress, unlawful incarceration, false incarceration, and physical and verbal threats of injury, because plaintiff Drennon complied with his conditions of parole which most of the defendants took exception thereto."

¶ 168. "Plaintiff Drennon incorporates by reference Plaintiff Drennon's previous NOTICE OF TORT CLAIM filed in 2014 and June, 2016 NOTICE OF TORT CLAIM regarding the Defendants Board of Corrections, Department of Corrections, Commission of Pardons and Parole, and Defendants Unknown and Known agents and Parole officers interfering with and stopping Plaintiff Drennon from engaging in voluntary assistance to individuals needing to read and understand the law, as well as stalking and harassing Plaintiff Drennon beginning in October, 2013 and continuing to present day."

¶ 169. "The Defendant Parole Commission Parole Officer (PO), Ms. Vorhies and two other Unknown Defendant parole officials handcuffed Plaintiff Drennon because Plaintiff Drennon could not pay for a polygraph test."

¶ 170. "The Defendant Parole Commission Parole Officer (PO), Ms. Vorhies and two other Unknown Defendant parole officials knew that Plaintiff Drennon qualified for transitional funding, or other available funding, for parolees and probationers to pay for mandatory programs, treatment and/or polygraphs."

¶ 171. "Ms. Vorhies knew that Plaintiff Drennon was on disability without means to pay for a polygraph due to many medical problems without the assistance of individuals willing to donate funds to Plaintiff Drennon."

¶ 172. "Plaintiff Drennon was restricted from volunteering services, where individuals whom would help with research the law help pay as donations for Plaintiff Drennon's COS, child support and Polygraph testing, a prior Parole officer stopping Plaintiff Drennon from benefits."

¶ 176. "All the Defendants refused to assist Plaintiff Drennon in locating the funds for the polygraph test resulting in Plaintiff Drennon being placed into the Ada County Jail and under the medical care provider for the Ada County Jail for 7 to 14 days, then transferred to Defendant ISCI and ISCC wherein Plaintiff Drennon was deprived of the mandatorily required adequate medical care and medication by Corizon the private medical care provider."

¶ 178. "Plaintiff Drennon clearly informed the Defendant Parole officers that Plaintiff Drennon has to take approximately 35-40 medications up to three times daily which the Defendant Parole officers ignored; also nor did the Defendant Parole officials acquire verification from the Defendant Ada County officials that they could insure that Plaintiff Drennon received all of his medications and treatment for the numerous physical illnesses."

¶ 181. "The Defendant Ada County Medical staff ignored Plaintiff Drennon notification and proceeded to change and reduce Plaintiff Drennon's dosages as well as stopped several urgent medical needs."

¶ 184. "Defendant Vorhies and defendant Brood deprived plaintiff Drennon of his adequate access to hearing panel that was impartial and would review the records requested for a determination of plaintiff's claims being accurate, in regards to funding the polygraph test."

¶ 186. "Because the Defendant Ada County Jail medical staff could not give Plaintiff Drennon the absolutely mandatory medication the Defendant Ada County Jail had Plaintiff Drennon moved to the Defendant Idaho State Correctional Institution (ISCI)."

¶ 188. "The Defendant ISCI medical staff and administration could not comply with Plaintiff Drennon's medical needs, as well as how to classify and house Plaintiff Drennon, Plaintiff Drennon was moved to the Defendant Idaho State Correctional Center (ISCC) under the care custody and control of Warden Randy Blades."

¶ 189. "Plaintiff Drennon was then housed in the PIE building and again was denied the absolutely mandatory medication. Plaintiff Drennon had no choice but break the rules by engaging in self-medicating by bartering with offenders that had medication adequate enough to help Plaintiff Drennon stay alive."

¶ 192. "Plaintiff Drennon's doctors, Dr. Silva and Dr. Mills, informed Plaintiff Drennon that Plaintiff Drennon suffered from malnutrition, extremely high hypertension, out of control diabetes; advance additional nick and vertebra injury that requires surgery."

¶ 195. "Plaintiff Drennon will most likely lose his right calve in the near future, which a direct cause of the State Officials and both Defendant Contract Medical Provider and Defendant in-house medical provider."

¶ 196. "Defendants deprived Plaintiff Drennon of his constitutionally protect Right to be free from cruel and unusual punishment by the gross inadequacies of medical treatment and due process of law by being housed in the Defendant Idaho State prison and correctional systems."

¶ 219. "Plaintiff Drennon claims and alleges that the Defendants State, County and Boise City officials are engaging in exaggerated and knowingly falsified investigative conduct which includes harassing many of Plaintiff Drennon's associates and friends, as well as harassing Plaintiff Drennon's wife and family."

¶ 221. "Plaintiff Drennon alleges and claims that the defendants knew or should have known that their conduct deprived plaintiff Drennon of his constitutionally protected right to adequate medical care."

¶ 222. "Plaintiff Drennon alleges and claims that the Idaho legislature and legislative body failed to adequately provide a statute that would protect plaintiff Drennon's rights to adequate medical care at the time they implemented the modifications to Idaho code 20 § 229B."

¶ 227. "The defendants in this case have chilled plaintiff Drennon's ability to provide legal research assistance to individuals who cannot afford to hire attorneys or who wish to proceed without an attorney."

¶ 230. Plaintiff Drennon has been deprived by the defendants of income equaling approximately $100-$200,000 over the last three years, all because of the unfounded harassment and threats and orders to cease exercising plaintiff's right to assist individuals and attorneys and their legal research problems.

Plaintiff Robert Coy:

¶ 232. "Plaintiff Coy discovered that there had been a mistake in the income tax filings with the Defendant State of Idaho and Defendant Idaho Tax Commission and sought a correction of those Tax filings."

¶ 234. "Plaintiff Coy complied with the laws in this regard, however the defendants failed to put forth a proper challenge to plaintiff Coy's claims against the Defendants for legitimate tax refund."

¶ 238. "Plaintiff Coy reviewed the law under the State and Federal Uniform Commercial Codes and Statutes and Plaintiff Coy determined that the Idaho tax commission defendants were actually a Corporation and as such Plaintiff

**MEMORANDUM DECISION AND ORDER - 12**

Coy could file a UCC-1 against those defendants who were violating the very statutes and laws authorizing Plaintiff Coy to be reimbursed his paid taxes under the zero tax return standards."

¶ 239. "Defendant Idaho State tax commission and defendants' known and unknown John and Jane Doe issued a notice of levy to Plaintiff for alleged fines and penalties for pursuing the legal avenue in over-payment of taxable income."

¶ 240. "Plaintiff Coy filed a legal challenge to the alleged fines and penalties, however the Defendants State of Idaho and Idaho Tax Commission failed to comply with the statutes by intentionally ignoring Plaintiff Coy's challenged the Levy attempt."

¶ 253. "On or around May 11, 2016, Plaintiff Coy, received correspondence from the State of Idaho, Department of Administration, Division of Insurance and Internal Support Risk Management Program, stating that they were unable to discern any involvement of the State of Idaho or its employees in this matter and that they were closing the case."

¶ 254. "Nowhere in the documents did the Defendant(s) explain to Plaintiff Coy why it was the lien was invalid, and to this day no one has explained why Plaintiff Coy's UCC filings may be inappropriate, other than citing a statute which makes following the UCC Rules some form of illegal act."

¶ 255. "Plaintiff Coy alleges and claims that there has never been a legitimate or legal tax assessment, and that the alleged taxes are fictitious."

Plaintiff James Coy

¶ 268. "Plaintiff James Coy purchased a 1994 Lexus on March 10, 2013 and paid $300.00 for the Lexus."

¶ 270. "Eleven months after Plaintiff James Coy registered the Lexus Plaintiff James Coy received a demand letter from the Idaho Tax Commission demanding the taxes on the Lexus and applied a $6,000.00 value to the Lexus."

¶ 280. "Because the Idaho Tax Commission had refused to act in a reasonable fashion Plaintiff James Coy sought other avenues to get this matter resolved which included the State and Federal Uniform Commercial Codes."

¶ 290. "To this day, the above individuals, Tax Commission and their agents have refused to respond to Plaintiff James Coy's written notices and other demands."

¶ 291. "Plaintiff James Coy has been harassed by Tim Hurst and Shelley Johnson, Tax Commission Compliance Officers-2, from the Field Collection Bureau demanding payment of 375.54."

¶ 292. "The defendants handed plaintiff James Coy a document entitled **WARRANT** for the express purpose of stealing $410.31 from plaintiff."

¶ 293. "Plaintiff alleges that the warrant is a fraudulent document prepared just to scare plaintiff into paying the $410.31."

¶ 294. "Because Plaintiff James Coy has been levied $402.31 that is on my credit report, which has caused injury to my credit resulting in Plaintiff James Coy's loss of purchasing a home and other credit purchased items."

Compl. (Docket No. 1 & Atts. 1 & 2).

Clearly, each Plaintiffs' allegations, while perhaps specific each to himself, are otherwise substantively disconnected from the balance of the Complaint as a whole.[2] As a consequence, Plaintiffs' Complaint – with its improper lumping of individual claims against various Defendants – is problematic and constitutes a basis for dismissal, at least in large part. *See infra*.

2. Plaintiffs' Complaint is Unintelligible

In the Motions to Dismiss, Defendants repeatedly characterize Plaintiffs' Complaint as confusing, at the very least. The Court agrees. Although Plaintiffs make some general allegations suggesting that they were harassed (*see supra*), they give no clear indication about what they are speaking. Plaintiffs cite to state and federal statutes, constitutional provisions,

---

[2] To be fair, following the undersigned's review of Plaintiffs' Complaint, there does appear to be somewhat a common thread between Plaintiffs' allegations, insofar as Plaintiffs contend that they were harassed because they assisted one another in the legal work relative to their individual claims. *See, e.g.*, Compl. ¶¶ 155, 173, 211, 213, 228, 263, 267, & 298 (Docket No. 1, Atts. 1 & 2). However, compared against the scores of allegations within the Complaint as a whole, such a minute thread fails to establish the requisite uniformity to allow each of Plaintiffs' claims to proceed against each of the Defendants in one, single action.

**MEMORANDUM DECISION AND ORDER - 14**

financing statements, copyright notices, notices of international commercial claim remedy, liens, polygraph tests, physical impairments and associated medication lists, debtor's prison, tax bills, and bill challenges; yet, nothing about such assertions has any linear coherence that can be connected to the wrongs they allege to have suffered. Simply put, the Complaint is unintelligible. Not surprisingly, the Court cannot discern the outlines of any particular claim for relief. Moreover, the assertions of conspiracies alleged to link the Defendants are as confusing and convoluted as the Complaint itself.

Each Defendant nonetheless attempts to frame the issues in ways susceptible to a decision in their favor on the merits. But the difficulties raised by the unintelligible nature of Plaintiffs' Complaint do not give way simply by Defendants seeking to characterize the claims of the Complaint in some fashion that Defendants would argue makes them amenable to dismissal. In other words, at its core, Plaintiffs' Complaint fails to put Defendants on fair notice of the claims against them pursuant to FRCP 8. For that reason, Plaintiffs' Complaint is largely[3] dismissed. *See, e.g.*, *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (collecting cases upholding Rule 8 dismissals where pleadings where "verbose," "confusing," "distracting, ambiguous and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," noting: "Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a

---

[3] Notwithstanding the inadequacies with Plaintiffs' Complaint, the State Defendants appear to acknowledge that Defendant Drennon has alleged personal capacity claims for damages and/or official capacity claims for declaratory and injunctive relief against certain of those State Defendants. *See* State Defs.' Mem. in Supp. of MTD, p. 4 (Docket No. 6, Att. 1) (identifying those Defendants as representing "group 6(b), 7(b), 8(b), and 9(b) State Defendants," as defined by same briefing); State Defs.' Ans. (Docket No. 8) (same). Only these claims are allowed to proceed, even though the Court recognizes that such claims may likely be further tested.

**MEMORANDUM DECISION AND ORDER - 15**

plaintiff's claims and allegations.); *see also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (9th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

Normally, when a viable case can be pled, a district court should freely grant leave to amend. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002). However, "liberality in granting leave to amend is subject to several limitations." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay. *See id.*; *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("district court should grant leave to amend even if no request to amend the pleading was made, *unless it determines that the pleading could not possibly be cured by the allegation of other facts*.") (emphasis added). Given the nature of Plaintiffs' claims, the Court finds that granting leave to amend would be futile because the defects of Plaintiffs' Complaint cannot be cured.

        3.     <u>Plaintiffs Never Responded to Defendants' Motions to Dismiss</u>

A final factor weighing in favor of dismissal is Plaintiffs' failure to timely respond to Defendants' Motions to Dismiss. Specifically, as to the State Defendants' and Ada County Defendants' Motions to Dismiss (the Meridian Defendants' had not yet filed their Motion to Dismiss), Defendants' responses in opposition were due by December 2, 2016. On November 23, 2016, Plaintiffs requested that their responses to these same Motions to Dismiss be stayed to allow for another Defendant's (or, even, additional Defendants') response to Plaintiffs' Complaint to be filed. *See generally* Mot. to Hold in Abeyance (Docket No. 21). The Court

denied the request, but nonetheless extended the Plaintiffs' deadline to respond to the Motions to Dismiss to December 12, 2016. *See* 11/23/16 Order, p. 2 (Docket No. 23) ("This is not a sufficient reason to postpone the orderly progression of the action, including Plaintiffs' response to the now-pending Motions to Dismiss. However, to account for the upcoming Thanksgiving holiday, Plaintiffs' responses thereto – currently due on or before December 2, 2016 – will be extended to December 12, 2016. Despite this extension, Plaintiffs' Motion to Hold in Abeyance is **DENIED**.") (emphasis in original).

Even so, Plaintiffs did not respond to the State Defendants' and Ada County Defendants' Motions to Dismiss. Instead, on December 29, 2016, Plaintiff Drennon requested a 60-day extension to respond to "the Defendants pleadings or any court pleading." Mot. for Ext., p. 2 (Docket No. 27). The Court denied the request, reasoning:

> At the outset, it is not clear in which case Plaintiff Drennon is requesting an extension – the above-referenced state court action or this federal action. Regarding this federal action, there are two pending motions to dismiss (Docket Nos. 6 & 7). By order of this Court, Plaintiffs' responses to those motions to dismiss were due by December 12, 2016. To date, no responses to the motions to dismiss were ever submitted.
>
> Additionally, certain Defendants (the "Meridian Defendants") have since filed a motion to stay the action as to *Plaintiff Scott Jones's* claims against them, owing to pending state criminal charges against Plaintiff Jones. More recently, however, the Meridian Defendants have sought leave of Court to file another motion to dismiss[4] in light of changed circumstances. Responses thereto are due on or before February 21, 2017 – nearly 60 days from the date Plaintiff Drennon filed the at-issue Motion.
>
> Given these circumstances, there is no basis to grant Plaintiff Drennon's request for an extension. Plaintiff Drennon's Verified Motion for 60-Day Extension to Respond is therefore **DENIED**.

1/30/17 Order, p. 2 (Docket No. 31) (internal citations omitted, emphasis in original).

---

[4] The Meridian Defendants sought leave to file their Motion to Dismiss on January 25, 2017. *See* Mot. for Leave (Docket No. 30).

**MEMORANDUM DECISION AND ORDER - 17**

Then, on February 21, 2017 (more than two months after the extended deadline), each Plaintiff sought a 60-day further extension of time, requesting the following:

> [P]ursuant to Federal Rules of Civil Procedure -7 and local rules -7 for the U.S. District court for Idaho, moves this honorable Court for a sixty (60) day extension of time to file objections and responses to Defendants' Motions to Dismiss and/or for Summary Judgment, and supports this Motion with Affidavit.
>
> Plaintiffs have not received all of the Defendants' Answers or Responses to the Complaints served upon them or their counsel. Some of the Defendants have filed Motions to Dismiss and or Motions for Summary Judgment, however, not all of the Defendants have filed such documents. Plaintiffs need to determine the status of the other Defendants in this case.
>
> Plaintiffs believe a sixty (60) day extension is appropriate in order to allow Plaintiffs time to determine the status of these Defendants as well as provide adequate time to prepare their objections and or responses to the Defendants' Motions to Dismiss and/or for Summary Judgment.

Mot. for Ext., p. 2 (Docket No. 34);[5] *see also* Mots. for Ext. (Docket Nos. 35-37) (other Plaintiffs' identical requests). Plaintiffs' request in this latest regard is without merit for the same reasons identified earlier (in response to Plaintiffs' earlier efforts to stay the action via their Motion to Hold in Abeyance). *See, e.g.*, *See* 11/23/16 Order, p. 2 (Docket No. 23). Regardless, Plaintiffs *still* have never responded to any of the Defendants' Motions to Dismiss.

Having not responded to any of Defendants' Motions to Dismiss, this District's local practice permits the Court to consider such an omission as effectively consenting to the relief sought therein – ultimately, the dismissal of Plaintiffs' claims against Defendants. *See supra* (quoting Dist. Idaho Loc. Civ. R. 7.1(e)(1) ("[I]f an adverse party fails to timely file any

---

[5] The request also noted that Plaintiff Drennon was incarcerated and that "the other plaintiffs are deprived of adequate communication to develop claims and prosecute Plaintiffs' defenses," and that "Plaintiffs have been separated because of Drennon's incarceration and are having a difficult time correlating with each other's research and pleading preparation." Mot. for Ext., pp. 2-3 (Docket No. 34). This simply highlights the fact that Plaintiffs have improperly attempted to join unrelated parties and unrelated claims in this single action. *See supra*.

**MEMORANDUM DECISION AND ORDER - 18**

response documents required to be filed under this rule, such failure may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application.")).

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Motions to Dismiss (Docket Nos. 6, 7, & 30) are GRANTED, in part, and DENIED, in part, insofar as Plaintiffs' claims against Defendants are dismissed *except for* Plaintiff Drennon's personal capacity claims for damages and/or official capacity claims for declaratory and injunctive relief against certain State Defendants (identified as represented by groups 6(b), 7(b), 8(b), and 9(b) in State Defendants' briefing to date). On or before October 6, 2017, the remaining parties shall submit proposed deadlines moving forward (preferably by stipulation, if possible). The Court will then enter a Case Management Order, reflecting the parties' input as to such deadlines.

2. The Meridian Defendants' Motion to Stay (Docket No. 25) is DENIED as moot.

3. The Meridian Defendants' Motion for Leave to File Meridian Defendants' Motion to Dismiss (Docket No. 30) is GRANTED.

4. Plaintiffs' Motions for Extension of Time to respond to the Meridian Defendants' Motion to Dismiss (Docket Nos. 34-37) are DENIED.

5. Plaintiffs' Motion for Permanent Injunction (Docket No. 40) is DENIED as moot, without prejudice.

6. State Defendants' Motion to Seal (Docket No. 50) is GRANTED.

7. Plaintiffs' Motion for Hearing on Plaintiffs' Motion for Permanent Injunction (Docket No. 52) is DENIED as moot.

8. The Ada County Defendants' request for an award of attorneys' fees and costs is DENIED.



DATED: **September 19, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge